The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Rayford L. JACKSON, Defendant–Appellant.**

No. 99CA2473.

Colorado Court of Appeals, Div. IV.

May 20, 2004.

Certiorari Denied Oct. 4, 2004.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Christopher T. Braddock, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Rayford L. Jackson, appeals the judgment of conviction entered upon a jury verdict finding him guilty of possession of a weapon by a previous offender (POWPO) and his adjudication as a habitual criminal. We affirm.

The prosecution charged defendant with two counts of menacing, one count of third degree assault, and three counts of POWPO in connection with domestic violence incidents. Defendant was also charged under counts seven and eight with two habitual criminal counts. Defendant filed a motion to dismiss count eight, challenging the constitutionality of the underlying felony conviction, which the trial court denied.

A jury found defendant guilty of one count of POWPO and third degree assault. Defendant does not appeal the assault conviction.

Defendant's adjudication as a habitual criminal followed a two-day bench trial; the evidence presented on the first day addressed only count seven, and the second day, count eight. Thereafter, the trial court imposed two consecutive sentences totaling eleven years.

Through no fault of defendant, a transcript of the first day of the habitual criminal trial is unavailable. A division of this court ordered a limited remand to the trial court to settle or correct the record pursuant to C.A.R. 10. Following a hearing, the trial court settled the record and recertified this appeal.

I.

Defendant first contends that his habitual criminal adjudication on count seven is invalid because the trial court's reconstruction of the record is not sufficient to protect his right to appellate review. Specifically, defendant asserts that he cannot obtain effective review without a complete transcript of the lost day. We disagree.

Loss of a portion of the trial record does not automatically require reversal. However, reversal is required when a defendant can show that the incomplete record visits a hardship upon him or her and prejudices the appeal. *People v. Loggins*, 981 P.2d 630 (Colo.App.1998). To obtain relief, a defendant must demonstrate specific prejudice resulting from the state of the record on appeal. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996).

When a transcript is not available, C.A.R. 10(c) requires the appellant to prepare a statement of the evidence or proceedings from the best available means, including his or her recollection. The appellant then serves the statement upon opposing counsel for comments and changes and submits the final statement to the trial court for settlement, approval, and inclusion in the record on appeal. C.A.R. 10(c); *People v. Conley*, 804 P.2d 240 (Colo.App.1990).

In cases in which testimony is in dispute and the exact language used is crucial, reconstruction may not be an appropriate remedy for a missing transcript. *People v. Killpack*, 793 P.2d 642 (Colo.App.1990).

Here, upon the limited remand, defendant submitted a statement explaining that he was unable to reconstruct the record because

both his trial defense counsel and one of the trial prosecutors could not recall the events of the lost day. Thereafter, the trial court submitted a proposed order to the parties reconstructing the record from its own recollection and notes and its review of relevant portions of the transcript from the second day of the habitual criminal trial.

The order stated, in relevant part, that the prosecutor (former prosecutor) in defendant's underlying felony conviction testified and sponsored the admission of a triple-certified copy of the mittimus showing the underlying felony conviction and an amended mittimus correcting an erroneous date. The court further noted that the former prosecutor identified defendant based upon several court appearances both previously attended.

The trial court subsequently held a hearing, giving both parties the opportunity to address its proposed reconstruction. At the hearing, trial defense counsel described his limited notes of the former prosecutor's testimony, which corroborated the identification of defendant. Counsel testified that he could not recreate the record from his notes or specifically remember whether he made an objection at the time, but he believed he had objected to the validity of the mittimus.

The prosecution did not present witnesses, but noted that it had contacted the former prosecutor, who stated that the trial court's reconstruction appeared accurate. The prosecution also introduced statements from two of defendant's trial prosecutors, and while both had a limited recollection of the habitual criminal trial, they nevertheless stated that the court's reconstruction appeared accurate. In addition, one of the prosecutors provided a list of questions she asserted had been asked of both the former prosecutor and a witness who testified on the second day of the habitual criminal trial.

Despite defendant's objection that the trial court's reconstruction did not allow for meaningful challenge or appellate review, the trial court found that nothing was presented at the hearing to refute its reconstruction. Accordingly, satisfied with the accuracy of the rendition, the trial court submitted its unaltered reconstruction.

We reject defendant's assertion that the trial court's reconstructed record is inade-quate to permit review. The transcript of the reconstruction hearing, coupled with the transcript of the closing arguments from the habitual criminal trial summarizing the events of both days of that trial, support the accuracy of the trial court's reconstruction. The existing record, including the trial court's reconstruction, adequately preserves the substance of the lost day for our review.

Most important, closing arguments reveal that defendant's main, if not sole, argument concerning count seven challenged the validity of the underlying conviction based on the date discrepancies between the original and amended mittimuses. The trial court found those discrepancies to be technical errors of little relevance to its adjudication.

Hence, defendant's argument is ascertainable from the existing record, and the record is sufficient for appellate review, precluding the necessity of a complete transcript of the lost day. *See People v. Anderson,* 837 P.2d 293 (Colo.App.1992)(reversal of conviction was not required where appellate court was able fairly to review the defendant's contentions despite missing portions of transcript).

We reject defendant's contention that reconstruction is insufficient because the evidence not transcribed is trial testimony and the precise language used is critical. Unlike the circumstances in *People v. Killpack, supra,* on which defendant relies, nothing in his assertions, in the transcript that is available, or in the reconstructed record indicates any crucial evidence could have been misinterpreted, misapplied, misunderstood, or erroneously admitted. The two key elements of habitual criminal count seven, proof of the previous felony conviction and defendant's identification as the person convicted, appear to be undisputed, except for the mittimus variance, which defendant does not challenge on appeal.

For these reasons, defendant has failed to establish that the incomplete record visits a hardship upon him or prejudices his appeal. *See People v. Loggins, supra.*

## II.

■ Defendant next contends the trial court erred when it sua sponte reconstructed

the record of the first day of the habitual criminal trial from its own notes, recollection, and review, contrary to the procedures of C.A.R. 10(c). Specifically, defendant asserts that he was prejudiced because the trial judge acted as a participant at the hearing, instead of as an impartial arbiter. We disagree.

Here, contrary to defendant's assertion, the trial court adhered to the procedures required by C.A.R. 10(c) for record reconstruction. The court ordered defendant to prepare a statement of his recollection of the lost day. The trial court created its own reconstruction for the parties' comment and modification at the subsequent reconstruction hearing only after defendant was unable to do so. Nothing in C.A.R. 10(c) prohibits a trial court from using its own notes or recollection in record reconstruction. *See People v. Loggins, supra* (trial judge's recollections and impressions were admitted at reconstruction hearing to assist with record reconstruction).

■ We reject defendant's contention that the trial judge had a conflict of interest when both reconstructing the record and presiding over the reconstruction hearing. Although the judge relied upon his recollection, notes, and review of the existing record to create the reconstruction, he did not testify against defendant as a witness at the reconstruction hearing. Rather, he served as the final arbiter of the record, laboring impartially to clarify what originally had occurred. *See People v. Alomar,* 93 N.Y.2d 239, 689 N.Y.S.2d 680, 711 N.E.2d 958 (1999)(trial judge who both presided over the defendant's reconstruction hearing and relied on his own recollections to reconstruct the record did not violate the defendant's right to confront witnesses because the trial judge was not a witness in a constitutional sense).

Accordingly, contrary to defendant's assertion, there was no need for the trial judge to testify before a different judge regarding his reconstruction to maintain impartiality. *See Commonwealth v. Quinones,* 414 Mass. 423, 608 N.E.2d 724 (1993)(no suggestion of judicial bias when trial judge used his nontestimonial recitation for record reconstruction; he did not need to be a witness in a hearing held before another judge).

Hence, the trial court did not err by both reconstructing the record from its own recollection and review and presiding over defendant's reconstruction hearing.

### III.

■ Defendant next contends the trial court erred by denying his motion to dismiss habitual criminal count eight. Specifically, defendant asserts that the underlying felony conviction is constitutionally invalid because he was not advised of his right to appeal that conviction. We disagree.

■ It is a violation of due process to use an unconstitutional conviction to enhance punishment in a later criminal proceeding. *People v. Padilla,* 907 P.2d 601 (Colo.1995). However, a state may attach reasonable time limitations to the assertion of federal constitutional rights. *People v. Wiedemer,* 852 P.2d 424 (Colo.1993); *People v. Jenkins,* 83 P.3d 1122 (Colo.App.2003).

■ Section 16–5–402(1), C.R.S.2003, sets forth time limitations for the filing of a collateral attack on a judgment in a criminal case. As pertinent here, the statute provides three years from the date of the conviction to commence a collateral attack. However, the time limitation does not apply if the trial court finds that the defendant's failure to seek relief within the applicable period was the result of circumstances amounting to justifiable excuse or excusable neglect. *See People v. Robbins,* 87 P.3d 120 (Colo.App. 2003) (*cert. granted* April 12, 2004).

■ Whether a defendant has demonstrated justifiable excuse or excusable neglect is a question of fact to be resolved by the trial court. Its ruling will not be disturbed on appeal when the record supports its findings. *People v. Wiedemer, supra; People v. Clouse,* 74 P.3d 336 (Colo.App. 2002).

Here, we agree with the trial court that defendant's collateral attack is time barred. Defendant waited nine years from the date his conviction became final to file his collateral attack challenging its validity, six years beyond the statutory deadline. *See* § 16–5–402(1). At trial, although defendant presented unrefuted evidence that he was not ad-

vised of his right to appeal his conviction, he also admitted that he knew what an appeal was. In light of that testimony, the record supports the trial court's finding that defendant failed to show justifiable excuse or excusable neglect for his untimely attack. *See People v. Wiedemer, supra; People v. Clouse, supra.*

To the extent defendant relies on *People v. Boivin,* 632 P.2d 1038 (Colo.App.1981), for the proposition that the untimeliness of his collateral attack should be excused based solely on the fact that he was not notified of his right to appeal, he is mistaken. In *Boivin,* the defendant was permitted to file a late appeal because the trial court had failed to advise him of his appellate rights at the time of sentencing, despite the fact that the defendant was independently aware of such rights. In contrast here, defendant is not seeking directly to appeal his previous conviction, but instead asserts a collateral attack on that conviction, which is subject to the time limitations of § 16–5–402(1). *See People v. Robbins, supra.* Therefore, *Boivin* is distinguishable from this case.

Accordingly, the trial court properly denied defendant's motion to dismiss habitual criminal count eight.

## IV.

▮ Defendant next contends that there was insufficient evidence to support his POWPO conviction. We disagree.

▮ A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Sprouse,* 983 P.2d 771 (Colo.1999); *People v. Carrasco,* 85 P.3d 580 (Colo.App.2003).

▮ The determination of the credibility of the witnesses is solely within the province of the fact finder. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Johnson,* 923 P.2d 342 (Colo.App.1996).

Here, police retrieved a gun from the house where defendant was arrested. Shortly after defendant's arrest and again during trial, the victim positively identified the gun as belonging to defendant. She testified that defendant had used the same gun when he threatened her on several previous occasions, including the date upon which the POWPO charge was predicated. Further, another witness testified that the victim had once shown her defendant's gun and asked her to record its serial number. At trial, the witness recited the serial number and identified the gun as the same weapon the victim had previously shown her. This evidence provides ample support for the verdict.

▮ Contrary to defendant's assertion, the fact that he was not convicted of the menacing charge does not preclude a POWPO conviction. Although both charges arose from events that occurred on the same day, the charges have different elements of proof. *See* § 18–12–108, C.R.S.2003 (POWPO); § 18–3–206, C.R.S.2003 (menacing). It was not necessary for the jury to convict defendant of menacing before finding him guilty of POWPO.

Judgment affirmed.

Judge GRAHAM and Judge LOEB concur.